Dear Department of Libraries McVey,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
What is the impact of the Oklahoma Open Records Act, 51 O.S.1991 Supp. 2000, §§ 24A.1to 24A.26, and the RecordsManagement Act, 67 O.S. 1991 Supp. 2000, §§ 201to 215, uponelectronic messages created or received by State and localgovernments and which are made in connection with the transactionof public business, the expenditure of public funds or theadministering of public property?
 I. Introduction
¶ 1 In essence, you wish to know whether electronic messages ("e-mails")[1] generated or received by a State or local governmental agency are subject to the Open Records Act, and whether the preservation or destruction of those e-mails is governed by the Records Management Act. As is discussed more fully below, e-mail may or may not be a record as defined by the Open Records Act and therefore may or may not be subject to the provisions of that Act. Likewise, e-mail also may be a record under the Records Management Act and may therefore be subject to the provisions of that Act. In each case, its status as a record depends on its content, a factual issue.
 II. Open Records Act
¶ 2 The first question to be answered is whether both State and local governments are covered under the Open Records Act. Under that Act, a "public body" is defined as follows:
 "Public body" shall include, but not be limited to, any office, department, board, bureau, commission, agency, trusteeship, authority, council, committee, trust or any entity created by a trust, county, city, village, town, township, district, school district, fair board, court, executive office, advisory group, task force, study group, or any subdivision thereof, supported in whole or in part by public funds or entrusted with the expenditure of public funds or administering or operating public property, and all committees, or subcommittees thereof. Except for the records required by Section 24A.4 of this title, "public body" does not mean judges, justices, the Council on Judicial Complaints, the Legislature, or legislators[.]
51 O.S. Supp. 2000, § 24A.3[51-24A.3](2). Under this definition both State and local governmental entities are governed by the Open Records Act. Therefore, the discussion concerning the Open Records Act applies to both State and local governments.
¶ 3 For purposes of the Open Records Act, "record" is defined as follows:
 "Record" means all documents, including, but not limited to, any book, paper, photograph, microfilm, data files created by or used with computer software, computer tape, disk, and record, sound recording, film recording, video record or other material regardless of physical form or characteristic,
created by, received by, under the authority of, or coming into the custody, control or possession of public officials, public bodies, or their representatives in connection with the transaction of public business, the expenditure of public funds or the administering of public property. "Record" does not mean computer software, nongovernment personal effects or, unless public disclosure is required by other laws or regulations, vehicle movement records of the Oklahoma Turnpike Authority obtained in connection with the Authority's electronic toll collection system, personal financial information, credit reports or other financial data obtained by or submitted to a public body for the purpose of evaluating credit worthiness, obtaining a license, permit, or for the purpose of becoming qualified to contract with a public body. "Record" does not mean any personal information provided by a guest at any facility owned or operated by the Oklahoma Tourism and Recreation Department to obtain any service at such facility or by a purchaser of a product sold by or through the Oklahoma Tourism and Recreation Department[.]
¶ 4 2001 Okla. Sess. Law ch. 355, § 1(1) (amending 51 O.S.2001, § 24A.3[51-24A.3](1)) (emphasis added).
¶ 5 Using its everyday meaning, see 25 O.S. 1991, § 1[25-1],
"regardless of" means "without taking into account" or "in spite of." Webster's Third New International Dictionary 1911 (3d ed. 1993). Therefore, if the document is created in connection with the transaction of public business, the expenditure of public funds or the administering of public property, it is a "record"[2] and is therefore subject to the Open Records Act. This is true without regard to the physical characteristics of the document.
 III. Records Management Act
A. Overview.
¶ 6 We begin with the general mandate that "[a]ll records made or received by or under the authority of or coming into the custody, control or possession of public officials of this state in the course of their public duties shall not be mutilated, destroyed, transferred, removed, altered or otherwise damaged or disposed of, in whole or in part, except as provided by law." 67O.S. 1991, § 209[67-209]. Further, "[e]xcept as otherwise provided by law, no state record shall be destroyed or otherwise disposed of unless it is determined by the Archives and Records Commission[3] that the record has no further administrative, legal, fiscal, research or historical value."Id. § 210 (footnote added).
¶ 7 "Record" is defined in the Records Management Act as a:
 [D]ocument, book, paper, photograph, microfilm, computer tape, disk, record, sound recording, film recording, video record or other material, regardless of physical form or characteristics,
made or received pursuant to law or ordinance or in connection with the transaction of official business[,] the expenditure of public funds, or the administration of public property. Library and museum material made or acquired and preserved solely for reference or exhibition purposes and stocks of publications are not included within the definition of records as used in this act.
Id. § 203(a). As with the definition in the Open Records Act, this definition explicitly states that, "regardless of physical form or characteristics," a document is a record if it has certain characteristics. Id. See A.G. Opin. 83-191 ("records created or maintained, or both, in electronic format are subject to the provisions of . . . the Records Management Act."). Id.
at 341. Also, as with the definition under the Open Records Act, to be a record a document must be "made or received pursuant to law or ordinance or in connection with the transaction of official business[,] the expenditure of public funds, or the administration of public property." 67 O.S. 1991, § 203[67-203](a).See Armstrong v. Executive Office, 1 F.3d 1274, 1283 (D.C. Cir. 1993) (observing that to be a record under the Federal Records Act, a document must be "(1) `made or received by an agency of the United States Government under Federal law or in connection with the transaction of public business' and (2) `preserved or appropriate for preservation by that agency . . . as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the Government or because of the informational value of data in [it].'") Id.
(citation omitted); Armstrong v. Executive Office,810 F. Supp. 335, 339-40 (D.C. 1993), aff'd in part and rev'd in part,1 F.3d 1274 (D.C. Cir. 1993) (noting that statutory language makes clear that the Federal Records Act was intended to include materials "regardless of physical form or characteristics").
¶ 8 The Records Management Act has a broad range.[4]
Under the Act, "[a]gency" is defined as "any department, office, commission, board, authority or other unit, however designated, of the state government." 67 O.S. 1991, § 203[67-203](d). "State record" is defined as:
 (1) A record of a department, office, commission, board, authority or other agency, however designated, of the state government.
(2) A record of the State Legislature.
 (3) A record of the Supreme Court, the Court of Criminal Appeals or any other court of record, whether of statewide or local jurisdiction.
 (4) Any other record designated or treated as a state record under state law.
Id. § 203(b).
¶ 9 Under the Act, the State Librarian, who is designated as both the State Archivist and State Records Administrator, "shall establish and administer a records management program, which will apply efficient and economical management methods to the creation, utilization, maintenance, retention, preservation and disposal of state records." Id. § 204. Toward that end, the Administrator must establish standards, procedures, and techniques for records management; survey records and information operations and recommend improvements as the need arises; establish standards to assist State agencies in preparing schedules setting retention periods for State records which have continuing value and which allow for disposal of records which no longer need to be preserved; establish programs to select and preserve essential records; and obtain reports from agencies as administration of the program requires. Id. § 205(1).
¶ 10 To assist the Administrator, agency heads are charged with establishing a program to manage and maintain a particular agency's records. As part of their duties, most agencies must establish "schedules proposing the length of time each state record series warrants retention for administrative, legal or fiscal purposes after it has been created or received by the agency." 67 O.S. Supp. 2000, § 206[67-206](A)(3). Further, the head of each agency "also shall submit lists of state records in the custody of the head of the agency that are not needed in the transaction of current business and that do not have sufficient administrative, legal or fiscal value to warrant their further keeping for disposal." Id. If so requested, the Administrator must also "advise and assist in the establishment of records management programs in the legislative and judicial branches of state government and shall, upon request, provide a program of services similar to those available to the executive branch of state government." 67 O.S. 1991, § 208[67-208]. The Administrator is charged with promulgating rules for the preservation of records under the Records Management Act. Id. § 212. In instances where the destruction or other disposition of State records is sought, the Administrator and the Archives and Records Commission are charged with promulgating rules. Id.
B. State Agencies
1. Types of records in Oklahoma
¶ 11 The Oklahoma Archives and Records Commission divides "records" into two categories: substantive and ancillary. "Substantive records" are records which "document the organization, functions, policies, procedures, operations and essential transactions of an agency, board, commission, or institution." OAC 60:10-3-5(a) (1998). "Ancillary records" are defined as "routine in nature, having neither evidential nor informational value beyond the immediate use for which they were created or received, nor do they contain supporting documentation for financial or business transactions of an agency." OAC60:10-3-5(b) (1998). If difficulty arises in determining whether a record is substantive or ancillary, the document must be considered a substantive record. Id. For instance, an e-mail from a supervisor reminding his staff that an agency-wide meeting has been scheduled certainly would qualify as a "record," because it was made or received in connection with the transaction of official business. However, it has no value beyond the immediate use for which it was created, i.e., providing a reminder of that already known: that a meeting will be held. It is therefore an ancillary record, and can be destroyed when its usefulness has passed, provided that type of e-mail has been approved for disposition by the Archives and Records Commission. Id.
¶ 12 Here, as under the Open Records Act, whether an e-mail is a "record," and whether it is a substantive or ancillary record, is heavily fact-dependent. If there is a doubt as to whether an e-mail is a record or non-record,[5] "it shall be considered a record." OAC 60:10-3-5(c). An e-mail, as with any other record, cannot be disposed of unless it is done in accordance with the administrative rules of the Archives and Records Commission. OAC 60:10-1-1 — 10-3-7.[6]
¶ 13 In summary: as with any other record, whether an e-mail is a substantive record and whether it is one which must be retained is a question of fact, depending on the content of the e-mail. Unless clearly indicated to the contrary, the remainder of this Opinion deals with those records which must be retained for some period of time.
2. Form in which E-mail can be Stored.
¶ 14 As the court in Armstrong pointed out, not everything accompanies the hard copy of an e-mail when it is printed out. For example:
 Directories, distribution lists, acknowledgements of receipts and similar materials do not appear on the computer screen — and thus are not reproduced when users print out the information that appears on the screen. Without this "non-screen" information, a later reader may not be able to glean from the hard copy such basic facts as who sent or received a particular message or when it was received. For example, if a note is sent to individuals on a distribution list already in the computer, the hard copy may well include only a generic reference to the distribution list (e.g., "List A"), not the names of the individuals on the list who received the document. Consequently, if only the hard copy is preserved in such situations, essential transmittal information relevant to a fuller understanding of the context and import of an electronic communication will simply vanish.
Id., 1 F.3d at 1280. The Court pointed out some other problems with merely keeping a hard copy of the record.
 (When printed on paper, a[n] [e-mail] note will not always identify the sender(s) and recipient(s) of a note by name. Instead, the sender(s) or recipient(s) may be identified only by (a) userid [sic] [i.e., user identification]; (b) nickname; or (c) the title given to a distribution list identifying several individuals. Identifying the names of the sender(s) or recipient(s) for such notes requires reference to the distribution lists or directories maintained only in electronic form.) (If requested, [the electronic communications system] will provide the sender of a note with a confirmation that it has been received, called an "acknowledgment." The acknowledgment records the date and time the addressee of the note opened his or her electronic mail. This information on the date and time the note is received does not appear on the paper copy of the note when it is printed-out.)
Id. at 1284 (citations omitted).[7]
¶ 15 That is not to say that every single bit of electronic data is required to be kept. See id. at 1283 ("the mere existence of the paper printouts does not affect the record status of the electronic materials unless the paper versions include all significant material contained in the electronic records"). (Emphasis added).
¶ 16 Of course, federal cases dealing with the federal records storage act are not binding on Oklahoma. This is presented only to point out possible problems associated with electronic records storage. It should be noted that this general policy is reflected in disposition schedules approved by the Oklahoma Archives and Records Commission. Generally, the preferred method is electronic storage. See, e.g., Okla. Archives Records Comm'n, Consol. Gen. Records Disposition Schedule, (2001). (The preference is that the records "are retained and are accessible in a usable format for their entire stipulated retention period." Id. at iii Elec. Mail Sys.(1). If this cannot be done, "agencies shall download the record to another electronic recordskeeping system"). Id. at iii Elec. Mail Sys.(2). However, recognizing that this might put a strain on the capacity of the agency's electronic storage system, approved schedules allow for hard copies to be printed out and maintained, (if it cannot be maintained electronically, agencies can "print the record out and maintain it in hard copy format"). Id. See also at iv Elec. Mail Sys.(7) (making certain that "[i]f senders and recipients are identified only by user identifications, nicknames, codes, titles, or the names of distribution lists, agencies shall ensure that records exist to identify senders and recipients.").
¶ 17 In other words, hard copies of e-mails required to be kept for some period of time would be permissible if an agency's electronic mail system does not have the capability to maintain records in their original format, provided there exist other records from which an interested party could ascertain all significant material contained in the electronic record.
3. Who Keeps the Records.
¶ 18 There is also a question as to who bears the obligation to preserve e-mails, i.e., whether both the sender and receiver are obligated to preserve the e-mail in an acceptable format.
¶ 19 Although not specifically addressed in the statutes, several phrases in the Records Management Act indicate that, in an interagency situation, the responsibility lies with both the sender and receiver. The statute defines record as material "made or received pursuant to law or ordinance or in connection with the transaction of official business[,] the expenditure of public funds, or the administration of public property." 67 O.S.1991, § 203[67-203](a) (emphasis added). See also 67 O.S. Supp. 2000,§ 206[67-206](A)(3) (requiring agency heads to submit to the Commission schedules proposing the length of time each record should be retained "after it has been created or received by theagency"); 67 O.S. 1991, § 209[67-209] (prohibiting destruction of "[a]ll records made or received by or under the authority of orcoming into the custody, control or possession of public officials"). Therefore, the wording of these statutes indicates a requirement for an e-mail to be kept by both the sender and the recipient in a situation where the e-mail is being transmitted between agencies. In other words, both the agency transmitting and the agency receiving the e-mail would be responsible for preserving it as a record.
¶ 20 However, in a situation where the e-mail is being sent from one person to another within the same agency, this seems a needless duplication of storage on valuable computer space. In such an instance, so long as either the sender or the receiver retains it as a record, the retention requirement is satisfied, as the e-mail is indeed being saved within the agency. In such a situation, as a practical matter, the sender is the logical one to save the record. Again, this is a matter of storage space. The sender (one person and the creator of the message) as opposed to everyone to whom it was sent (e.g., an e-mail addressed to everyone employed by the agency) should bear the responsibility for storage. This is analogous to convenience copies, which can be kept until they are "no longer required for administrative purposes," at which time they can be destroyed. OAC 60:10-3-2(d) (1996). See id. (stating that certain records can be destroyed without first notifying the State Records Administrator so long as they "have an approved disposition of `Retain in office and destroy after primary use,' `Retain in office until no longer required for administrative purposes, then destroy,' `Retain in office and destroy upon verification,' or `Retain in office until superseded, then destroy.'") Id.; see also, e.g., Okla. Archives Records Comm'n, Consol. Gen. Records Disposition Schedule, Admin. Records, Correspondence (Convenience Copy) (2001), at ¶ 1-4 (dealing with convenience copies of incoming and copies of outgoing correspondence by agency heads); Id. at Admin. Records, Reports at ¶ 1-7(B) (dealing with convenience copies of "reports submitted by Divisions, Departments, or Sections documenting activities to Administration").
¶ 21 When dealing with both inter- and intra-agency e-mails it is worth repeating that the length of time a record — whether paper or electronic — must be kept is determined by a variety of factors. Some records — such as convenience copies, discussed above — may be destroyed when they are no longer useful, provided such destruction is approved in advance by the Archives and Records Commission. Also, as noted above, the length of time a record must be kept before disposition depends on its contents. Such factors are heavily fact-dependent and beyond the scope of an Attorney General Opinion. 74 O.S. Supp. 2000, § 18b[74-18b](A)(5).
4. Method of Access
¶ 22 Having established that electronic communications can be records under the Records Management Act and can be records available for inspection and copying under the Open Records Act and the Records Management Act, a question could arise concerning access to these records by members of the public. This was addressed in A.G. Opin. 85-36. In that Opinion, there was a question of balancing the public's right to know under the Open Records Act and the obligation of an agency to protect records from destruction, mutilation or alteration. The Opinion held that a State agency has authority to allow a commercial entity access to specific data in that file in an electronic format, so long as the system permitting the electronic access is secure enough to preserve the records as required by the Records Management Act and safeguard them from destruction, mutilation or alteration.Id. at 86. This same rationale applies to non-commercial entities as well.
¶ 23 However, records in an electronic format — as in any other format — may contain information which is required by law to be kept confidential. See 51 O.S. Supp. 2000, §§ 24A.5[51-24A.5](1), 24A.7(A), (C), (D); Merrill v. Okla. Tax Comm'n,831 P.2d 634, 640 (Okla. 1992); see also A.G. Opin. 99-30 at 139 (home telephone numbers, home addresses and social security numbers of State employees must be kept confidential by State agencies).See also 74 O.S. Supp. 2000, § 840-2.11[74-840-2.11]. If that confidential information cannot be protected in the electronic format as kept by the agency, the agency must provide the requested information in a format in which the confidential information can be redacted.
C. Political Subdivisions.
¶ 24 The Records Management Act does not directly apply to political subdivisions. This is shown in a variety of ways. For example, as noted above, "agency" is defined in the Records Management Act as "any department, office, commission, board, authority or other unit, however designated, of the state
government." 67 O.S. 1991, § 203[67-203](d) (emphasis added). The fact the Legislature used the word "state government" when referring to agencies indicates a legislative intent to exclude political subdivisions. See Patterson v. Beall, 19 P.3d 839, 845 (Okla. 2000). Examples indicating a general intention that the Act apply only to State records include 67 O.S. 1991, § 204[67-204] (noting that the State Librarian, as State Archivist and State Records Administrator, is charged with establishing and administering a program "which will apply efficient and economical management methods to the creation, utilization, maintenance, retention, preservation and disposal of state records.") Id. (emphasis added). See also 67 O.S. 1991, § 208[67-208] (noting that the Administrator must, if requested, assist "in the establishment of records management programs in the legislative and judicial branches of state government and shall, upon request, provide a program of services similar to those available to the executive branch of state government pursuant to the provisions of this act.") Id. (emphasis added).
¶ 25 The Archives and Records Commission's authority is also limited. Disposition of State records must be approved by the Archives and Records Commission which has "sole, entire and exclusive authority of the disposition for all public records and archives of state officers, departments, boards, commissions, agencies and institutions of this state." 67 O.S. Supp. 2000, §305[67-305]. However, the Commission's authority "shall not apply to records and archives of political subdivisions of the state."Id. A differentiation between State records and local records[8] is also set forth in the Records Management Act.
¶ 26 However, that is not to say political subdivisions are exempt. Although statutes (19 O.S. 1971, §§ 911[19-911] through 918) which created in each county a County Archives and Records Commission were repealed, see 1972 Okla. Sess. Laws, ch. 209, § 3, the Records Management Act states:
 The governing body of each county, city, town, village, township, district, authority or any public corporation or political entity whether organized and existing under charter or under general law shall
promote the principles of efficient records management for local records. Such governing body shall, as far as practical, follow the program, established for the management of state records. The Administrator shall, insofar as possible, upon the request of a governing body provide advice on the establishment of a local records management program.
67 O.S. 1991, § 207[67-207]. The word "shall" is ordinarily construed as mandatory. Osprey L.L.C. v. Kelly-Moore Paint Co.,984 P.2d 194, 199 (Okla. 1999). Therefore, political subdivisions are mandated by the Legislature to maintain a records management program, and, "as far as practical," utilize the program established by the State Records Management Act, with the assistance of the Administrator.
¶ 27 Therefore, to the extent practical, the above discussion pertaining to State records applies to political subdivisions as well. What constitutes "practical" is a question of fact beyond the scope of an Attorney General Opinion. 74 O.S. Supp. 2000, §18b[74-18b](A)(5).
¶ 28 It is, therefore, the official Opinion of the Attorney General that:
1 So long as the item is connected with the transaction of official business, the expenditure of public funds, or the administration of public property, electronic mail created by or received by either a State public body or a public body of a political subdivision constitutes a record which is subject to the Oklahoma Open Records Act, 51 O.S. 1991 Supp. 2000, §§24A.1 to 24A.26.
2. So long as the item is connected with the transaction ofofficial business, the expenditure of public funds, or theadministration of public property, electronic mail created by orreceived by a State agency is subject to the Records ManagementAct, 67 O.S. 1991 Supp. 2000, §§ 201 to 215.
 3. Although the Archives and Records Commission has noauthority over records and archives of political subdivisions ofthe State, the Records Management Act, 67 O.S. 1991 Supp.1999, §§ 201to 215, requires State political subdivisions tofollow the program established for the management of Staterecords "as far as practical." What is "practical" is a questionof fact beyond the scope of an Attorney General Opinion. 74O.S. Supp. 2000, § 18b(A)(5).
 4. For purposes of the Oklahoma Open Records Act, 51 O.S.1991 Supp. 1999, §§ 24A.1to 24A.26, and the RecordsManagement Act, 67 O.S. 1991 Supp. 1999, §§ 201to 215,electronic mail can be retained either in electronic form or onpaper. However, if it is retained on paper, the agency mustensure that sufficient documentation in other records existselsewhere in the agency so a person seeking the information couldascertain all significant material contained in the electronicrecord.
 5. For purposes of the Oklahoma Open Records Act, 51 O.S.1991 Supp. 1999, §§ 24A.1to 24A.26, and the RecordsManagement Act, 67 O.S. 1991 Supp. 1999, §§ 201to 215, anagency has authority to allow a requestor access to specific datain that file in an electronic format so long as the systempermitting the electronic access is secure enough to preserve therecords and safeguard them from destruction, mutilation andalteration as required by the Records Management Act. If therecord contains information which is required by law to be keptconfidential, and the agency cannot protect that confidentialinformation in the electronic format, the agency must provide theinformation in a format which allows the confidential informationto be redacted.
 6. Under the Records Management Act, 67 O.S. 1991 Supp.1999, §§ 201to 215, it is the responsibility of both the senderand receiver to preserve electronic messages sent betweenagencies. Concerning intra-agency mail, it is the responsibilityof only the sender to preserve electronic messages. When dealingwith both inter- and intra-agency e-mails, the length of time arecord — whether paper or electronic — must be kept is determinedby a variety of factors, including the contents of the record.The length of time a record must be retained involves questionsof fact beyond the scope of an Attorney General Opinion. 74O.S. Supp. 2000, § 18b(A)(5).
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
DAN CONNALLY ASSISTANT ATTORNEY GENERAL
[1] Electronic mail is defined in the Oklahoma Statutes (specifically, the Consumer Protection Act) as:
 [A] message, file, or other information that is transmitted through a local, regional, or global network regardless of whether the message, file, or other information is viewed, stored for retrieval at a later time, printed on to paper or other similar material, or is filtered or screened by a computer program that is designed or intended to filter or screen items of electronic mail[.]
15 O.S. Supp. 2000, § 776.4[15-776.4](1). This is the definition used throughout this Opinion. See 25 O.S. 1991, § 2[25-2] ("Whenever the meaning of a word or phrase is defined in any statute, such definition is applicable to the same word or phrase wherever it occurs, except where a contrary intention plainly appears.")Id.
[2] An example where an e-mail may not be a record: an e-mail between State or local government employees making lunch plans (if such use is permitted by the agency) generally is not in connection with public business, spending public money or administering public property, and therefore generally is not a record. Of course, whether a particular e-mail message fits this definition is a question of fact.
[3] The Archives and Records Commission is composed of one member appointed by the Governor as Chair, the State Librarian as Vice Chairman and Secretary (who is also designated the Administrator in the Records Management Act), and includes the Lieutenant Governor, the State Auditor and Inspector and the State Treasurer (or their designees) as members. The Commission's scope of authority is discussed more fully later, but it is worth noting here that the Commission does not have authority over confidential records and files of the Oklahoma Tax Commission. 2001 Okla. Sess. Law ch. 9, § 1 (amending 67 O.S. Supp. 2000, §305[67-305]) (statute creating the Archives and Records Commission).
[4] The application of the Records Management Act to political subdivisions is discussed in more detail in section C, below. The discussion here and in the immediately following section B of this Opinion deal with the application of the Act to State entities.
[5] "Non-record material" is defined by the Archives and Records Commission as that which "exhibit[s] none of the attributes of records and may be destroyed by an agency when no longer of immediate value." OAC 60:10-3-5(c).
[6] This is true despite the provisions of the Open Records Act. The Open Records Act specifically states that it "does not impose any additional recordkeeping requirements on public bodies or public officials." 51 O.S. 1991, § 24A.18[51-24A.18]. Even records of receipts and expenditures which are specifically required to be kept and maintained under 51 O.S. 1991, § 24A.4[51-24A.4] can be "disposed of as provided by law." Id.
[7] As an example, some Oklahoma agencies have document lists used by the sender. For example, e-mails can be addressed to all members of a particular section of the office, or all who office at a particular site. Someone wishing to know who received a particular e-mail would be unable to discern that from the hard copy. Still, this particular example could be remedied by referring to other records describing who was employed at a particular location or in a particular group at the time the message was sent.
[8] A "local record" is defined under the Act as "a record of a county, city, town, village, township, district, authority or any public corporation or political entity whether organized and existing under charter or under general law unless the record is designated or treated as a state record under state law." 67O.S. 1991, § 203[67-203](c).